## WEAVER'S EX'RS *vs.* WEAVER'S CREDITORS.

1. A decree of the Probate Court on the settlement of an insolvent estate having been reversed on appeal, and the cause remanded, the certificate of the clerk of the Supreme Court to the court below recited the decree of said primary court, "requiring the executors to settle up before the court would hear the contest among the several creditors upon the objections filed, which, being brought before the Supreme Court by appeal, was re- versed, annulled," &c.; while the opinion showed that the decree was re- versed because " it was not proper to do either just then :" *Held*, that the object of the certificate simply was to inform the primary court what ac- tion the Supreme Court had taken on its decree, while the opinion showed the reasons of that action and the course indicated for the future progress of the cause; and that the certificate did not require the court to hear and determine the contests among the creditors before proceeding to a settle- ment with the executors.

2. When a cause is brought a second time before the Supreme Court, that court will not question the correctness of the law as declared by the pre- vious decision.

3. Where an estate was reported insolvent prior to the pas age of the act of 1843, and in progress of settlement, all the subsequent proceedings must conform to the provisions of that act.

4. The retroactive effect thus given to the act of 1843 does not conflict with any constitutional provision, nor does it deprive the executor of any vested right, personal to himself, which he could have insisted on under the pre- vious law; it only works a revocation of his letters testamentary, and changes the mode of proceeding to a final settlement of the estate.

5. Under the act of 1843, a settlement with the executor and the election of an administrator *de bonis non* must be had, before the court can proceed to hear and determine the contests among the creditors; the settlement with the executor and the election of an administrator may precede each other according to the convenience of the parties, with the assent of the court, but no final judgment can be rendered against the executor until his successor is qualified.

ERROR to the Court of Probate of Madison.

JAMES ROBINSON and ROBERT C. BRICKELL, for plaintiffs in error :

There is a manifest difference, if not a direct conflict, between the certificate sent down to the court below and the certified opinion, and again between the certified opinion and the reported opinion. In this conflict the certificate must govern ; it is absolutely conclusive, and the primary court cannot receive any evidence of any kind to contradict it. The law makes it the duty of the clerk of the Supreme Court to certify to the primary courts every final judgment of the Supreme Court.—(Clay's Digest 309 § 14.) The entry on the minutes is the judgment of the court, and not the opinion. The same law that requires the judges of the Supreme Court to write out and file opinions on all material points, requires the same thing of the circuit judges.—(*Ib.* 286 § 6.) Suppose a circuit judge has written out an opinion in a case, giving his reasons for rendering judgment, and the case is reversed on error. Which is reversed, his opinion or the judgment ? The judgment certainly; otherwise, a right judgment, if founded on a wrong reason, would be reversed. The minute entry, then, must be the judgment of the court. Here, then, is a sworn officer doing a particular act, which he is required by law to do, and it must import absolute verity.

This certificate informed the primary court that its decree had been reversed and annulled, because it required the executors to settle their accounts before the contests among the creditors were determined, instead of first hearing and deciding the contests among the creditors. None but an ascertained or admitted creditor would have the right to litigate with the executor ; and it could not be determined who were in fact creditors, until the contests among those claiming to be such were settled.

Even if the certificate was a total departure from the judgment itself, the primary court would be bound by it, and could not receive any evidence to vary or contradict it ; and the Supreme Court, in revising its decision, can only look to the evidence on which that decision was predicated.

If the court should decide this point against plaintiffs in error, and look beyond the certificate, and set it aside as of no force, then it opens up the whole case, and leaves the court at liberty to reconsider the points formerly decided in the case. In this event, the following suggestions are submitted on those points : An executor derives all his rights and powers from the will of the testator. With one or two restrictions, he can do anything before probate that he can after it. The court confers on him no new rights or powers.—1 Williams on Executors 171, 172, 173. Our statutes have somewhat modified the common law, and imposed some new restrictions, but none of those affect the question. The executor holds his office by appointment of the testator, and not by appointment of law ; he holds independently of the law, and may rightfully hold in defiance of it : the law cannot deprive him of his office. The will invests him with the property, to be held by him as a trustee for legatees and creditors. This trust is created by a man, and not by law, and therefore partakes of the nature of a contract. The law can no more deprive him of this trust, than it could if it were created by deed; the trust stands upon the same footing as all other trust deeds. Again; by the will, the executor acquires personal rights : 1st, he has a right to retain money due to him by his testator, (Milam v. Ragland, 19 Ala. 85;) 2nd, he has the right to retain for a debt due to him, even though it is barred by the statute of limitations, (Knight v. Godbold, 7 Ala. 304;) 3rd, if he has paid debts with his own money, the assets to that amount become his, (Merchant v. Driver, 1 Saund. 307 ; 3 John. Ch. 312; Hall v. Chenault, 13 Ala. 710.) If you remove him from his office, you deprive him of each of these rights.— In Shortridge v. Easley, 10 Ala. 520, this court say, that the act of 1843 takes away the executor's general right of retainer; and it may be clearly inferred from the case, that this common law right existed here until this act. If you remove him, you destroy the protection which the law threw over his debt, and subject it to the statute of limitations ; you deprive him of all

the notes and money, notwithstanding he may have paid debts to the amount of them. It sometimes happens that an executor pays debts in full, supposing the estate to be solvent, or in ignorance of debts contracted out of the State. If the act of 1843 is made to relate back, and govern the prior report, the executor is deprived of all these rights. The report of insolvency by the executors in this case, as the law then stood, did not deprive them of their office, nor did it put it in the power of any officer of the law to deprive them of it. Nor can the act of 1843 be made to retroact on the report, and give it an effect which it did not have when made. It may well be doubted whether the legislature had any such power; but it is enough for the argument that they have not attempted to exercise it : the act itself shows that it was intended to be prospective only. Phillips v. Gray, 1 Ala. 226 ; Martin v. Baldwin, 7 ib. 923 ; Gould v. Hayes, 19 ib. 429.

If this be so, then nothing less or other than a report and decree after and under the act of 1843, can deprive the executor of his office. All the court could do would be, to make distribution of the assets in his hands according to the statute in Clay's Dig. 194 § § 10, 11, 12.

D. C. HUMPHREYS and C. C. CLAY, Jr., *contra :*

The Probate Court was proceeding to do just what this court determined at January term, 1852, ought to be done.—Steele v. Weaver's Executors, 20 Ala. 540 ; Weaver's Executors v. Weaver's Creditors, *ib.* 557. The court below, therefore, committed no error, and plaintiffs in error should be taxed with the costs individually.

CHILTON, C. J.—This case was before us at a previous term, and the facts will substantially appear in the statement of it as reported in 20 Ala. 557. It was then held, that the order of the Probate Court, requiring the parties to proceed to a settlement with the executors under the law as it existed prior to the passage of the act of 1843, and disregarding the provisions of this act, was erroneous, and the cause for that reason was reversed and remanded.

1. In the certificate of reversal sent down by the clerk of this court, it was certified " that the records and proceedings of said

court, in a certain final settlement of the estate of George I. Weaver, deceased, wherein, by said court, at the August term, 1851, it was considered, that in the case of George Steele, creditor, and the executors of the estate of Geo. I. Weaver, a decree was rendered requiring the executors to settle up before the court would hear the contest among the several creditors upon the objections filed, which, being brought before the Supreme Court, by appeal," &c., " was reversed, annulled, &c." The counsel for the executors insisted in the court below, and here contend, that the effect of this certificate was, a direction to the Probate Court to proceed and test the validity of the claims of the creditors before making a settlement with the executors. But we do not think this construction of the certificate can be supported. The clerk merely refers to the decree or order of the Probate Court, and copies so much of it as he deems necessary to identify it and show what decree it was which this court set aside. The object of the certificate is accomplished, when the primary court is thus informed of the action which this court has taken upon its judgment or decree. The reasons for the reversal, and the course indicated as a guide for the primary tribunal, will usually be found in the opinion delivered in the cause, a copy of which the law requires the clerk to transmit under his certificate to the court below; but these constitute no portion of the judgment entry, upon which his certificate is predicated.

The ground of reversal in this case, when previously here, was not that the court required the executors to settle before the creditors' contests were tried, but that it required them to settle *at all*, in the posture of the case as then presented; for the record showed that the act of 1843 had not been complied with, by giving the proper notice.

2. We have duly considered the argument of the counsel for the plaintiffs in error, in opposition to giving to the act of 1843 a retrospective operation, so as to make it apply to estates which had been reported insolvent prior to its passage, and were the question an open one in this court, we should be strongly inclined to restrict its operation to estates reported insolvent after the statute took effect; but the contrary construction has been too firmly established, by numerous decisions of this court, now to be disturbed without great detriment to the public. Be-

sides, such construction has become a part of the law of this case by the decision pronounced in it when previously before us; and it is well settled that, when a cause is brought the second time before this court, we will not question the correctness of the law as declared by the previous decision of it.—Meredith v. Nash, 4 S. & P. 62 ; Gee v. Williamson, 1 Por. 321 ; Goodwin v. McGehee, 15 Ala. 239 ; Rugely & Harrison v. Robinson, 19 Ala. 412.

The retroactive effect which this court, by a series of adjudications, (see 7 Ala. 923 ; 9 ib. 925 ; 10 ib. 915 ; 12 ib. 494; 20 ib. 540, 557,) has given to the act of 1843, does not, in our opinion, conflict with any constitutional provision. The law, prior to the act of 1843, subjected the property of a deceased insolvent to the payment of his debts, and certain remedies were provided for the benefit of his creditors. This act, designed as an amendment to the previous laws, affects the remedy, and, without divesting the previous representative of the estate of any right partaking of the nature of a contract, it transfers the office which the previous law had conferred upon him, by the appointment of the court or the award of letters testamentary, to the person selected by the creditors, requiring him to settle with such new appointee. But it is very clear that, in this settlement, he would have a right to insist upon protecting himself, to the same extent as if he had been required to settle and make distribution under the old law, as provided for the settlement of insolvent estates : that is to say, the application of the act of 1843 to the administration, when a new representative of the estate is elected by the creditors, is tantamount to a revocation of his letters testamentary, and requires that he should come to a settlement ; but, while it changes the mode of proceeding to a final settlement of the estate, it takes from the executor no vested right personal to himself and which he could have insisted upon as the law previously stood. The statute may well provide for a revocation of the authority which has been previously given him by the court under the provisions of the pre-existing law, but the legislature cannot legitimately say that what constituted a valid and binding obligation in his favor against the estate, shall be destroyed or impaired by this subsequent act.

The record before us does not show that any such right will be interfered with by the construction which has been placed

upon the act of 1843, nor that the primary court has attempted to deprive the executors of any demand which they might lawfully have claimed under a settlement made in conformity with the previous law.

The statute of 9th February, 1843, does not seem to contemplate that the contest as to the demands due to the creditors should be determined prior to their going into an election of an administrator, nor before the first representative of the estate is called to a settlement. There is certainly much reason and good sense in the suggestion that the court cannot tell, until after the contest is determined, who are and who are not subsisting creditors, since their demands or claims may be rejected, and consequently, if the election for an administrator *de bonis non* precedes the contest, persons may be allowed to vote who have no right to do so ; but this is a matter to be addressed to the legislature, as a reason for a modification of the law. The act, by requiring the court to give notice that the settlement and election shall take place on a certain day, not less than thirty nor more than sixty days from the time the estate is declared insolvent, while nine months are given within which to prepare for the contest of the claims, very clearly indicates that the settlement and election shall precede the contest.—See Acts of 1843, pp. 34, 47. The sixth section also provides for the meeting of the creditors, by the assent of the court, to be continued or adjourned from time to time until an election is made, and shows that there is no such necessary connection between the settlement with the executors and the election of their successor as to require that they should be contemporaneous.

, Either may precede the other, to suit the convenience of the parties, by the assent of the court, although no final judgment could be awarded against the executor until his successor was qualified. The most the court could do before that would be, to make the settlement so far as to ascertain the state of accounts between the executor and the estate, and to determine the amount of assets in his hands, and it could afterwards order the same to be delivered over to his successor, when one should be appointed as provided for.

We are unable to perceive any error in the proceedings of the court as far as it progressed. Thus far, they conform to the directions indicated by the previous decision.

Let the judgment be affirmed.