# CITIZENS MUTUAL INSURANCE COMPANY OF MOBILE *vs.* LOTT.

[ DETINUE TO RECOVER PERSONAL PROPERTY SEIZED BY TAX COLLECTOR TO ENFORCE PAYMENT OF TAXES.]

1. *Premiums received by insurance companies incorporated by State laws ; how liable to be taxed.*—Insurance companies incorporated in this State are liable to pay a tax of one per cent. on the gross amount of premiums received from their business, in this State, during each tax year, exclusively for public school purposes, and the fact that portions of the amount of gross premiums have been paid out in dividends, does not exempt the amount so paid out from this tax.
2. *Same.*—Such tax is not a part of the "State assessment," on which the county commissioners can levy an additional tax for county purposes.
3. *Same.*—Such companies are liable for the tax imposed on dividends declared or earned, and not divided, but not on dividends declared and paid over to the stockholders during the tax year. Such dividends are to be considered as divided and paid over to the stockholders when the stockholders have received the same in money, or in credits on their stock notes in possession of the company.
4. *Premiums; how estimated.*—In taxing the gross receipts of premiums, they are to be estimated for the year ending December 31st last preceding the assessment.—Act 1868, p. 306, § 15.

APPEAL from Circuit Court of Mobile.
Tried before Hon. JOHN ELLIOTT.

This was an action of detinue brought by the Citizens Mutual Insurance Company of Mobile, the appellant, against E. B. Lott, the appellee, to recover certain personal property seized by the appellee, as tax collector of Mobile county, to enforce the collection of certain taxes which the appellant claimed had been illegally assessed against it, and for which taxes it denied any liability.

The case was tried on an agreed state of facts, as follows: "Prior to and during the years 1868 and 1869, the plaintiff was, and still is, an Insurance Company, chartered by the laws of Alabama, located and doing business in the

13

city and county of Mobile, and the defendant was collector of State and county taxes in and for the county of Mobile. On the 1st day of January, 1869, the plaintiff owned real estate situate in said county and city of the assessed value of twenty thousand dollars, and on that day its capital stock, actually paid in, and not invested in real estate, was seventy-one thousand five hundred dollars, upon which real estate and capital stock there was assessed against the plaintiff as taxes, in the year 1869, the following taxes, to-wit:

| | |
|---|---|
| State tax on $91,500, at ¾ of 1 per cent.........| $ 686 25 |
| County tax, 40 per cent. on State tax........... | 274 50 |
| School tax................................... | 85 75 |
| Collector's and assessor's fees, each 75c........ | 1 50 |
| Amounting to total of..................... | $1,048 50 |

All the above taxes were paid by the plaintiff to the defendant in the year 1869. During the year 1868, the plaintiff received from time to time, in each month of that year, premiums on its insurances, and the gross amount of premiums so received during that year was seventy-four thousand dollars, of which sum seventy-three thousand nine hundred and fifty dollars was received before the 31st day of December, 1868, and fifty dollars on that day, which premiums became, and were from the time they were received, the property of the plaintiff, and constituted and were the principal and largest part of the income and profits of the plaintiff for that year, its receipts from all other sources during that year amounting to eleven thousand one hundred and forty-one dollars and forty-three cents. In the month of July of that year, (1868) the plaintiff declared out of its earnings and profits a dividend of twenty-seven thousand dollars, which was afterwards, and before the 31st day of December, 1868, divided and paid to the stockholders rateably, some shares of the dividends being paid in cash, and others by being endorsed as credits on stock notes, &c., and it did not declare, or earn, or divide, any other dividend during that year; and of the amount of said dividend, at least twenty-three thousand four hundred and seventy-eight dollars and fifty-eight cents

was derived from premiums so derived from its business. In and for the year 1869, there was assessed against the plaintiff, on said gross amount of premiums received by it, a specific tax of one per cent. exclusively for school purposes, such assessments amounting to seven hundred and forty dollars, and on the amount of said dividends so declared and divided, there were assessed against the plaintiff, in the year 1869, as taxes in and for that year, the following taxes:

| | |
|---|---|
| School tax, ¾ per cent. on $27,000 dividend. | $202 50 |
| County tax, 40 per cent. of amount of State tax on dividend............................................. | 81 00 |
| School tax................................................ | 25 35 |
| Total assessment of dividends............... | $308 85 |

These last mentioned taxes, (that is, the said several taxes on gross amount of premiums received and dividend declared and divided,) the said plaintiff insisted it was not legally bound to pay, &c., and refused to pay; and to enforce his demand of payment, the defendant seized the personal property used for in this action, and defendant refused to deliver the same to plaintiff on demand, &c. It was further agreed, that in the year 1869, the tax assessor of Mobile county left with the secretary of the plaintiff a printed assessment list of items, in the usual form, upon which it was supposed the plaintiff was liable to assessment for taxes; among these items, the only one relating to dividends was one in the printed words, as follows: "Dividends declared, or earned and not divided, by incorporated company chartered by laws of this State," and opposite which, and under head of "value," plaintiff's secretary inserted the figures $27,000, and the list was sworn to by the secretary, the proper officer to perform such acts, and returned by him to the assessor, who afterwards inserted the figures $202 50 under the heading "tax." The bill of taxes presented by the tax collector to plaintiff for payment, in the fall of 1869, contained, among other items, one, and one only, in relation to dividends, in the following words and figures, to-wit: "All dividends declared, $27,000: ¾ per cent., $202 50." The amount

inserted by the secretary, twenty-seven thousand dollars, is the same dividend as hereinbefore mentioned. The sum of five hundred and forty dollars was paid in cash to stockholders who had paid up their stock in full, and the residue, twenty-six thousand four hundred and sixty dollars, was divided rateably among stockholders who had not paid up their stock, and the share of each entered as a credit on his stock note, in accordance with the provisions of the charter.

Upon the foregoing facts, if the court shall be of opinion that the plaintiff was not legally bound to pay any part of said taxes on the gross amount of premiums received, and on said dividends declared and divided, judgment is to be rendered against the defendant for the goods and chattels sued for, and five cents damages for the detention thereof, and costs, &c. If the court shall be of opinion that the plaintiff was legally bound to pay the whole of said taxes, then judgment is to be rendered for the defendant for the value of the property seized, against plaintiff and its sureties, (who had given bond and taken possession of the property,) for one thousand and forty-eight dollars and eighty-five cents, with ten per cent. thereon for penalty for non-payment of said taxes in due time, and for costs of suit. If the court shall be of opinion that the plaintiff was not legally bound to pay the whole of said taxes, but was legally bound to pay either or any part thereof, the judgment is to be rendered against the plaintiff and its sureties, in favor of defendant, for such part thereof as the court shall consider the plaintiff legally bound to pay, with ten per cent. damages on the amount, as penalty, &c. Each party reserves right of appeal, &c.''

The court was of opinion that the plaintiff was not liable to pay the taxes on dividends, but was liable to pay the specific tax on the gross amount of premiums received, and gave judgment accordingly.

The plaintiff now appeals, and assigns as error—

1. The judgment rendered.

2. Not rendering judgment in favor of appellant on the agreed case.

The appellee, with the consent of appellant, assigns as error—

That the court erred in ruling against him as to tax on dividends, and not rendering judgment in his favor therefor.

WM. G. JONES, for appellant.—1. It is conceded that the power of taxation is inherent in every sovereign State, is part of the legislative power, and is very comprehensive in its character. But *it is not unlimited.* There are some limitations of it arising from the essential nature of taxation, independently of any express constitutional limitations; and others arising from express constitutional limitations, inserted in the constitutions of some States. Among the first class of limitations, those arising from the nature of the power, is the requirement of *equality and uniformity.*

In the late excellent work of Cooley on Constitutional Limitations, it is laid down, that " it is of *the very essence of taxation that it be equal and uniform.*"—Cooley on Const. Lim. pp. 487, 495. And this, he says, is a principle of taxation quite independent of any express constitutional provision.—*Ib.*

Where, under the name of taxation, the legislature exacts money from the citizens for any other than public purposes, or in a grossly unequal manner, it is *not taxation* —it is confiscation or plunder.—Cooley, pp. 487, 488, 490.

Though the legislature has a very large discretion in selecting the subjects of taxation, it is not an unlimited discretion. For example, it cannot lay the whole burden of taxation upon one named man, or ten particular men, or on one small class of men. That would not be taxation, in any proper sense of the word, but mere extortion and plunder.

It is submitted, that the taxes in question are not equal and *uniform* with other taxes imposed by the act. On the contrary, they are manifestly and grossly unequal. For example, take the sum of $27,000, on which the dividend tax is assessed in this case. It is part of the larger sum of $74,000 of premiums received, and part also of the

$71,000 of capital stock paid in, which the company had on the 1st of January, 1869.  It is taxed—

| | |
|---|---|
| 1st, as gross premiums, 1 per cent. (exclusively for school purposes) . . . . . . . . . . . .    .. . . . . . . . . . | $270 00 |
| 2d, as dividend, State tax, ¾ per cent . . . . . . . . . . . | 202 50 |
|    "    county tax, 40 per cent on State.. | 81 00 |
|    "    school tax .. . . . . . . . . . . . . . . . . | 25 35 |
| 3d, as capital stock paid in, State tax, ¾ per cent.. | 202 50 |
|    "     "     "    county tax . . . . . . . . . . | 81 00 |
|    "     "     "    school tax . . . . . . . . . . | 25 35 |
|       Total tax' (more than 3½ per cent.).    . . . . . . . . | $887 70 |

This is more than double the rate of taxation imposed by the act of 31st December, 1867, on the property or income of private persons, or of many other corporations.

2. These taxes are also in violation of the express limitations of the taxing power contained in the new constitution of Alabama.—See Const. Ala. Art. IX, § 1; Art. XI, § 13; Art. XII, § 4.  The convention doubtless knew the general disposition of each class in the community to throw the burthen of taxation off its own shoulders, and upon other classes.  Hence these constitutional provisions that property shall be taxed *in exact proportion to its value;* and the property of corporations shall be liable to *taxation the same as that of individuals.*  Hence, too, in providing for raising funds for educational purposes, it is provided by Art. XI, § 13, in clear, imperative language, that the legislature *"shall"* lay a specific tax annually on *"all"* banks, railroad companies, insurance companies, insurance companies, &c., &c., exclusively for educational purposes.  The act of 31st December, 1868, does *not* lay such a tax on banks, railroad companies, &c., but only on insurance companies and insurance agencies; throwing the whole burthen on one class of corporations, when the constitution imperatively requires the tax to be laid on *all* classes mentioned in that section.  This is a violation of the principle of equality and uniformity, and of the plain letter and spirit of the constitution.

3. If the act of 31st December, 1868, is applied to premiums received and a dividend declared and divided before

its passage, it is *retroactive* in its character, and its retro-action is not of a remedial character, but would have the effect of *creating an obligation on past transactions,* on which no such obligation arose at the time of the occurrence of such transactions. The legislature had no power to pass such a retroactive act, for the plain reason that it would not be legislative in its character. It would not be making *a law,* a rule of action, but merely creating an obligation. The distinction is a plain one. It may be well illustrated by our laws in relation to deeds for land. They provide that certain words used in a deed for lands shall create a certain obligation on the grantor. The words " grant, bar-gain, sell, or either of them," constitute a covenant that the grantor is seized in fee, and for quiet enjoyment, &c. Code, § 1884. But the words *release and forever quit-claim,* used in a deed for land, have now no such effect, and do not create any such obligation. The laws also prescribe a mode and form in which deeds shall be acknowledged or proved and certified for registration. Now, if a quit-claim deed is defectively proved or certified, the legislature may, by a retrospective act, cure the defective proof and certifi-cate, because that is merely remedial. But it can not pass a retrospective act giving to the words *"release and quit-claim"* an obligatory effect, which they had not when used in the deed. This distinction is recognized and sustained by the courts and the text writers.—See Cooley on Const. Lim. pp. 369, 370, 382; *Falconer v. Campbell,* 2 McLean, 192, 211, 212; and this principle is applicable, and has been applied to, tax laws.—See *Howard v. Savannah,* T. U. P. Charlt. 173; 4 U. S. Dig. p. 404, § 166; *Murchi-son v. McNeil,* 1 Wins. (N. C.) No. 1, 220; 25 U. S. Dig. p 107, § 103; *The Commonw. v. Wyoming Val. Canal Co.,* 50 Penn. 413; *Tyson v. School Dis. of Halifax,* 51 Penn. 9; *The Inhabitants of Medford v. Learned,* 16 Mass. 215–16; *Atkinson v. Dunlap,* 50 Maine, 111.

4. But retrospective laws are generally odious and op-pressive, and the courts will never give an act a retro-spective operation when it can be applied *prospectively,* unless the intention of the legislature to give it a retro-

spective operation is clearly expressed.—Cooley on Const. Lim. 370.

The act of 31st December, 1868, can have a prospective operation, and contains nothing necessarily or clearly showing that the legislature intended it should have a retrospective effect.

If the legislature can pass such retrospective tax laws, it may tax a man on income which he received and expended ten years before the passage of the law, or on land which he had sold ten years ago.

As to the tax on the dividend, it is illegal on another ground. It had been *declared and divided*, and really paid out, before the law was passed. The law makes the company taxable only on " dividends declared or earned and *not divided.*"—Act Dec. 31, 1868, § 13, cl. 8. What is a dividend? It is a thing, or sum, or number, that *is to be divided*, not *that has been divided.* The word is derived from the future participle of the Latin verb *dividio, dividendum;* not from the past participle *divisum.* Every school-boy who has learned simple division, knows that the dividend is the number *to be divided,* not a part of a number that has been divided. That is the primitive etymological meaning of the word. What is a dividend ·*declared* and *not divided ?* It is the gross sum which the directors of a company set apart out of their profits, *to be divided,* at a future time, among the stockholders or others entitled to participate in it. The division is a mere ministerial act, to be performed by some ministerial officer. Until such division is made, it is a dividend declared and not divided, and it remains the property of the company. As soon as the division is made, it ceases to be a *dividend,* in the proper meaning of that word. The portions of it produced by the division become the property of the several stockholders to whom they are respectively allotted.

It is true that in common parlance, these several portions are often improperly called dividends. It is plain, from the wording and punctuation of the act, that the legislature used the word in its original and proper sense, of a gross sum *to be divided;* for it says "dividends declared or earned and *not divided,*" A different construction

would lead to the absurdity and injustice of providing by law that one person shall pay taxes on another person's property. The dividend of $27,000 in this case had been declared *and divided* before the passage of the act, and so is not within the language or intention of the act.

C. W. RAPIER, for appellee.—In reference to the premium tax, there is scarcely room for discussion or doubt. Section 13, Art. IX of the constitution not only authorizes, but seems to command the legislature to impose such a tax.—See Cooley's Const. Lim. 55, 5ı, 58.

Provisions which are, or appear to be unjust, do not for such cause invalidate a law or parts of a constitution. *Ib.* 72.

For the almost unlimited power of legislatures in regard to taxation, except when restricted by federal or State constitutions, see 4 Wheat. 428.

The act of 1868, it is contended, can not be construed to have a retrospective action. The act was approved 31st December, 1868; section 15, p. 306, provides that all incomes, gross receipts, profits, &c., shall be estimated for the year ending on the 31st December last preceding the assessment, except when otherwise provided, and annually thereafter.

There is no clause in the constitution of this State prohibiting retrospective legislation. Judge Cooley says there are numerous cases which hold that retrospective laws are not obnoxious to constitutional objection, while in others they have been held to be void. But he mentions a class of cases in which retrospective legislation has not been held to be void on constitutional grounds; correcting irregularities in assessments of property for taxation and the levy of taxes thereon.—Cooley's Const. Lim. 370, 371, 373, 374, 375.

A retrospective statute which would impair the obligation of a contract, would be different from one which would cure a defect, or aid in the enforcement of a duty.

In reference to the dividend tax, it is plain the insurance company would be liable for it, if the dividends were not divided as originally reported and given in by the com-

pany. Is it not too late, a year after the assessment, to correct a mistake, if any, in the assessment? An opportunity existed for rectifying any error before the county commissioners. But to let the assessment stand as it was originally made, would not work an injustice to the company; to set it aside would be a wrong to the public. The stockholders compose the company. If the tax should be paid out of the company fund, the individual members would not be bound to pay on their respective shares; otherwise, they would be. But if the assessment should be set aside now, the public would lose the tax altogether. It would be paid neither by the company nor by its members. In declaring the dividend, the company had the right to reserve as much as would pay the taxes due upon it, and to save the stockholders that trouble. It does not appear that it did not elect to do so. It does not appear that there was any mistake. It is therefore submitted, that at this late day, the insurance company should be held to abide their own act.

A cross assignment has been made in this case, according to a rule found in 39th A. R.

PETERS, J.—This is a controversy between the Citizens Insurance Company of Mobile and the tax collector of the county of Mobile. The cause comes to this court from the judgment of the circuit court for the county of Mobile, upon an agreed state of facts. The case thus made involves a construction of several sections of the revenue law approved on December 31, 1868, which will be more fully stated below. In such a case, this court is confined solely to a consideration of the law applicable to the facts thus agreed on by the parties.—*Bott v. McCoy et al.*, 20 Ala. 578.

The revenue law above referred to levies a tax upon the following named property in this State, besides many other species of property not now necessary to be named; that is to say:

1. "The capital stock, actually paid in, of all incorporated companies created under any law of this State, whether general or special, except such portion of the

capital stock as may be invested in property and taxed otherwise as property."—Pamph. Acts 1868, pp. 297, 301, Act No. 1, § 6, cl. 23.

2. "All other property, real or personal, not otherwise specified herein, or exempted by law from taxation, and its value."—Pamph. Acts 1868, *supra*, p. 301, § 6, par. 25.

The same law defines "real property" to include "not only land, city, town and village lots, but all things thereunto pertaining, and all structures and other things so annexed or attached thereto as to pass to the vendee by the conveyance of the land or lot;" and "personal property" to include "all things other than real property, which have any pecuniary value, and moneys, credits, investments in bonds, stock, joint stock companies, or otherwise."—Pamph. Acts, *supra*, p. 297, § 2.

And it is also declared by said revenue law, that "there shall be, and is hereby levied on all property in this State, real and personal, not herein exempt from taxation, an annual tax of three-fourths of one per cent."—Pamph. Acts, *supra*, p. 303, § 11.

It is likewise provided by said act "to establish revenue laws for the State of Alabama," that "taxes shall be assessed by the assessor in each county on and from the following subjects, and at the following rates, to-wit:

"3. On the gross amount of premiums received from their business in this State *during such tax year*, by any insurance company chartered by or organized under any law of this State, one per cent. on the gross amount of premiums, exclusively for public school purposes. * * *

"3. On all dividends declared or earned and not divided by incorporated companies created under the laws of this State, to be assessed and paid by the companies earning the same, a tax of three-fourths of one per cent."— Pamph. Acts, *supra*, pp. 303, 304, § 12, par. 3, 8.

The words, "during such tax year," in the third paragraph of the section of the revenue law aforesaid, refer to and mean the "tax year preceding the assessment." And the tax year begins on the *first* day of January in each year, and ends on the *thirty-first* day of December following.—Pamph. Acts, *supra*, pp. 303, 304, § 12, par. 1, 3;

also, § 15, p. 306. The section defining the tax year is in these words :

" 3. *Be it further enacted,* That the tax year shall be the year ending with the 31st of December each year, and all property, unless herein otherwise provided, shall be given in by and assessed to the person, company, corporation, partnership, or association owning or having in possession the same, on the first day of January of the year for which the assessment is being made ; and the lien for taxes shall attach to all property for taxes whenever and so soon as such property becomes liable for tax under this act." Acts, *supra,* pp. 305, 306, § 14.

There can be no doubt that the legislature may pass laws which may comprehend past transactions, when such laws do not impair vested rights or the obligation of contracts. There must be a constitutional provision invaded, before the legislative power can become paralyzed ; and this invasion must distinctly appear.—*Fletcher v. Peck,* 6 Cr. 87 ; *Hoffman v. Hoffman et al.,* 26 Ala. 535 ; *Weaver's Ex'r v. Weaver's Creditors,* 23 Ala. 789 ; *Carpenter v. Pennsylvania,* 17 How. 456 ; *Dorman v. The State,* 34 Ala. 216, 232. It is also true, that, where there is doubt about the legislative intention as to the effect of a statute, it will always be construed so as to give it a prospective operation.—*Barnes v. Mayor of Mobile,* 19 Ala. 707 ; *Barron v. Tart,* 18 Ala. 668 ; *Gould v. Hays,* 19 Ala. 438. The power to tax is one of the sovereign powers of the State, and where there is no constitutional restriction, it is absolute. *Steubenville & Ind. R. R. Co. v. Tuscarawas County,* 6 Pitts. Law Jour. 78 ; Blackwell on Tax Titles, pp. 1, 2 ; *Stein v. Mayor of Mobile,* 17 Ala. 234. The revenue law took effect on the day of its passage, and subjected all taxable property in this State to its burdens on the *first* day of January, 1869.—*Br. Bk. Mobile v. Murphy,* 8 Ala. 119. Besides the statutes above quoted, the Revised Code provides that " the court of county commissioners must, in each year, levy a tax for county purposes, not exceeding *fifty* per cent. on the amount of the State assessment."—Revised Code, § 910. There is also a special tax permitted to be levied in the county of Mobile, for school purposes.—Pamph.

Acts 1853–4, p. 191, § 4.   The "State assessment" mentioned in section 910 of the Revised Côde, refers to the tax levied for State purposes—the "State tax" strictly so called—and not to the tax levied for the support of the public schools.   The statutes which deal with these subjects separate these taxes into two classes, which are devoted to different and distinct purposes.   Though each is a general tax for the State at large, yet it would be manifestly improper to confound them, and make them identical.   The one might be repealed, and the other would stand.—Rev. Code, § 536 ; Pamph. Acts 1868, p. 304, par. 3.   And besides, revenue laws being against a common right, are to be strictly construed.

The facts admitted show that the capital stock of the said company paid in and not invested, was seventy-one thousand dollars, and the value of its real estate was twenty thousand dollars ; the two items making ninety-one thousand dollars.   It further appears from the same statement, that the company received gross premiums to the amount of seventy-four thousand dollars, during the year 1868, from the first day of January, 1868, to the thirty-first day of December of the same year, both inclusive.   And beside these sums, it also received during the said year, 1868, the further sum of eleven thousand one hundred and forty-one dollars and forty-three cents of profits, from all sources, besides premiums.   And during the same year, (1868) the sum of twenty-seven thousand dollars was set aside as a dividend, and paid over to the stockholders of said company, before the first day of January. 1869, partly in cash, and partly by a credit on their notes given for stock.   It was also shown, that the sum of twenty-three thousand four hundred and seventy-eight dollars and fifty-eight cents of the above dividend, was derived from the gross premiums received during the year 1868.   And it is likewise shown, that the company did not pay any tax on said sum of eleven thousand one hundred and forty-four dollars and forty-three cents, profits above said, or any part thereof.

Applying the statutes above referred to, as herein explained, to the case made by the admitted facts in the

court below, the appellant's tax for the year 1869 should have been assessed as follows, viz :

1. On gross amount of premiums received during the year 1868, $74,000, at 1 per cent., exclusively for public school purposes .....................$740 00
2. On value of real estate and capital stock paid in, $91,000, at ¾ of 1 per cent................   682 50
3. Mobile county tax on last item, for county purposes, 40 per cent. of State tax..............  273 00
4. Mobile county school tax, one-fourth of the county tax  ...............................   68 25

These items added together make the sum of seventeen hundred and sixty-three dollars and seventy-five cents ; and this sum was the whole amount which the said company was properly liable to pay on the facts agreed on in the court below, besides the assessor's and tax collector's costs, which are put down in the statement of facts at one dollar and fifty cents.

The appellant was not liable to be assessed on the said sum of twenty-seven thousand dollars set aside as a dividend in July, 1868, because it was paid over to the stockholders.—Pamphlet Acts, 1868, p. 304, par. 8. This, I conceive, is the proper construction of this paragraph of the statute. But the tax on the gross amount of premiums was properly levied at one per cent., and the fact that this portion of the company's income was afterwards paid out in dividends, did not release it from the tax levied upon it. The language of the act is absolute and clearly expressed, and there is no other section that controls its meaning. It must be enforced as it stands. But the tax thus levied is a special tax for a special purpose, and the law does not justify the construction that a county and school tax for the county of Mobile may be added to it as a portion of the State assessment.

It does not appear that the income or profits of a domestic insurance company in this State is subject to be taxed as "income or profits ;" but if such income or profits exist at the commencement of the tax year in any species of taxable property in possession of the company, then it is taxable as such, under the designation of "property."—

Pamphlet Acts, 1863, p. 301, par. 25, p. 305, § 14; also, § 13. But the admitted facts, in this case, do not show that this was the condition of the income or profits therein mentioned. The court below did not therefore err in failing to charge the appellant with a tax upon this item.

The statement of facts also shows, that the appellant paid on the taxes for which its property was liable in the year 1869, one thousand and forty-eight dollars. This sum, deducted from the amount above ascertained, will leave a sum of seven hundred and fifteen dollars and seventy-five cents. For this last named sum of $715 75, and ten per cent. damages thereon, and one dollar and fifty cents cost of assessment and collection, judgment will be here entered, besides costs.

The judgment of the court below is reversed, and here entered in conformity with the foregoing opinion and the agreement of the parties, at appellant's costs in this court and the court below.