| 26 | 535 |
| 101 | 308 |
| 26 | 535 |
| 108 | 381 |

## HOFFMAN *vs.* HOFFMAN ET AL.

1. The Legislature has the power to prescribe rules for the execution of wills, whether made before or after the passage of the statute, if rights have not become vested by the testator's death.

2. Courts will not so construe a statute (when its words do not force them) as to defeat a devise or bequest, which would have been valid if the testator had died immediately after making it; but *contra*, as to a statute whose effect is to sustain rather than to defeat a bequest.

3. Section 1611 of the Code (which requires two witnesses to a will disposing of either real or personal property) applies to a will of realty executed before the adoption of the Code, if the testator died since its adoption; but a will of personalty only would be governed by the old law.

4. It is not necessary that the witnesses should sign the will in the presence of each other.

APPEAL from the Court of Probate of Macon.

IN the matter of the last will and testament of Jacob Hoffman, deceased, which was propounded for probate by the appellees, and contested by the appellant. The paper propounded for probate was dated the — day of January, 1848, and was attested by two witnesses, who attested it at different times, and not in the presence of each other ; and the testator died on the 15th February, 1853. The court charged the jury, in substance, that under these facts the will was valid as to the personalty, and invalid as to the realty ; and to this charge the contestant excepted.

This charge of the court, among other things, is now assigned for error.

J. E. BELSER and SEABORN WILLIAMS, for the appellant :

1. "It is a principle which has always been held sacred in the United States, that laws by which human action is to be regulated look forward, not backward, and are never to be construed retrospectively, unless the language of the act should render that indispensable." No words are found in the Code, in relation to wills, "which render this odious construction indispensable."—Ladiga v. Roland, 2 How. (U. S.) Rep. 589; Reynolds v. McArthur, 2 Peters, 434.

2. "The law authorizes the testator to make his testament, but it is only on the condition that he complies with its regulations ; if he does not fulfil the conditions, the dispositions he makes, not having been authorized by law, are of course null and without any efficacy whatever."—2 Bouv. Inst. 444-5.

3. The law which was of force at the time a will may have been written, dated, signed, witnessed, and published, must determine its efficacy or inefficacy as a will, and must also determine whether it was duly executed, and whether it shall or shall not be admitted to probate : for it is that law alone which authorized the testator to make the testament, and prescribed the requisites of the will, and the regulations with which a compliance was essential. "The old testamentary law still applies to all wills made before the Code took effect, whatever be the period of the testator's decease."—1 Jarman on Wills (mar. p.) 587, 628-32, 616-28, 147, 122, 108; 5 Watts

399; 15 Conn. 274; 4 Greenl. R. 134; Alston v. Coleman, 7 Ala. 795; 5 Watts & Serg. 198; Atwood's case, 21 Ala. 625; 3 Call's R. (top p.) 251; Boyce v. Holmes, 2 Ala. 57; 9 Ired. L. 288. "All men are presumed to make their wills, deeds, or contracts, with reference to the existing laws, unless the contrary is clearly expressed."—Alston v. Coleman, 7 Ala.795. The Code does not profess to operate on past transactions, or to give to facts a character which they did not possess at the time they took place, or to declare that, in the trial of causes depending on such facts, they shall be considered and allowed to operate in the decision of such causes, according to their new character. It does not profess to settle rights depending on laws as they existed for a long series of years before the Code took effect, by new principles which, for the first time, are introduced by its provisions. It does not profess to convert into a will, by mere legislation, those acts which, when they were performed and before the Code took effect, did not amount to a will.—Code, §§ 1589 to 1613, inclusive. The Code cannot be considered as creating a new rule for the government of the past case, or as declaring the interpretation of the former statutes for the direction of the courts. If we call our attention to the general sense of mankind on the subject of retrospective laws, it will afford us the best reason to presume, out of respect to the law-giver, that the Code was not meant to act retrospectively; "and although the tense used, according to the strict rules of grammatical construction, may seem to regard the past, yet (we must remember) this often arises from considering events, then future, as past in reference to proceedings provided for and regulated, which must necessarily succeed these events in the order of time. This results as well from the imperfection of language, as from a want of attention and accuracy in the use of it."—Crofton v. Ilsley, 4 Greenl. R. 139; 2 ib. 288; 7 Johns. 500-3; Code, § 1611.

Let us test the construction contended for by the proponent of this will. Suppose that after the testator and both witnesses signed the will, but before the Code took effect, the testator had become insane, and that his insanity had continued without intermission until his death in February, 1853; could the efficacy of the will be determined by the Code? Could lands acquired after the signing of the will by the testator

and both witnesses, pass by the will?—10 B. Mon. 1; 5 Watts & Serg. 198, and cases there cited, which show that "a devise of real estate is in the nature of a conveyance." "Lands can only pass by a particular mode of conveyance."—3 Call's R. (top p.) 263, *supra*.

The language of the New Hampshire and Massachusetts statutes, construed in 2 Foster's R. 434, 445, and in 12 Metc. R. 169, is unlike the language of our statute. But the language of our statute is like that found in the Connecticut statute, noticed in 15 Conn. Rep. 274, and also in 2 Foster's R. 448.— Code, § 1589. Our own court has endorsed (in Boyce v. Holmes, 2 Ala. 57) the English cases, which are repudiated by the New Hampshire court. By the laws of Massachusetts, New Hampshire, and all the other States, the probate of a will is conclusive as to real and personal estate.—Osgood v. Breed, 12 Mass. 531.

There is a clear distinction between the due execution of a will, and its admissibility or non-admissibility to probate, on the one hand, and the construction or meaning of a will after it has been duly admitted to probate. This distinction renders the decisions reported in 2 Foster's Rep. 434, and 12 Metc. Rep., and others relied on by proponent, unavailing for him: for in those cases, the wills had been duly admitted to probate, and the questions presented for decision related to the mere construction of wills which by their probate had been already conclusively decided to be duly executed and admissible to probate. But in this case, the questions are, was this will duly executed—shall it be admitted to probate—as a will of realty and personalty? is it a will of realty? is it a will of personalty? These questions must be determined by the old law.—3 U. S. Dig. 670, § 28.

It is conceded, that the law existing before the Code went into effect did not make it essential to the validity of a will of personal estate that there should be any subscribing witness. But this is one of that class of cases "in which something more than a mere compliance with legal requirements was necessary to the efficacy of the will, by the testator himself; he having chosen to prescribe to himself a special mode of execution." The rule in such cases declares, "if the testator afterwards neglects to comply with the prescribed

formalities, the inference to be drawn from these circumstances is, that he had not fully and definitely resolved on adopting the paper as his will." If this presumption is not rebutted by some extrinsic evidence of the testator intending the instrument to operate in its subsisting state, it cannot be admitted to probate.—1 Jarm. on Wills (mar. pp.) 93-4, 97-8 ; Avery v. Pixley, 4 Mass. 460-62.

The application of this doctrine to the evidence in this case compels the rejection of the will. It was written in January, 1848, when the testator was at home and in usual health. The testator then signed it, and Smith subscribed his name as a witness in his presence. No other person was then present. Still the testator did not regard it as complete ; he intended something further to be done to complete its execution, as is proved by his calling on Wright sometime afterwards " to come to his house to witness his will." Wright went and wrote his name as a witness in the presence of the testator,—no other person being present except testator's family. Testator produced the instrument, and told Wright " it was his will, and acknowledged his signature," before Wright signed as a witness ; and after this declaration of the testator, Wright signed as a witness. There is no evidence that the testator, after Wright became a witness, regarded the execution as then complete ; but there is strong evidence to the contrary : for the will directs the division of all his estate, " both real and personal," in such manner as to prove clearly, that what he approved of was a disposition or division, in the prescribed manner, of the entire estate, real and personal ; and that such a disposition of property as the will made was only approved by the testator when it carried the whole estate, real and personal. He lived about four years after Wright had signed as a witness, in the same county of Macon, and there is no evidence that he was afflicted or confined to his residence until about the time of his death in February, 1853. . Under these circumstances, it must be presumed that he knew, if the paper in its unfinished state was good for any purpose, it would only be good as to his personal estate, and that, therefore, he did not intend it to have any validity whatever, until made complete by the attestation of the requisite number of witnesses to carry the real, as well as the personal estate.

The proof is clear that he designed to have more than one witness to the instrument; for after Smith had signed, he called on Wright to come to his house "to witness his will." Why should he thus show a determination to have more than one witness? The obvious answer is, he knew the will could not be valid as to the realty without three witnesses; and after obtaining two he kept the instrument under advisement, because "the settled purpose of mind to pass his property did not then exist."—Bolling's Heirs v. Bolling's Ex'r, 22 Ala. 826.

The declaration made by the testator to Wright, that "it was his will", is of no weight. It was made before Wright signed as a witness, and yet he was then about to get Wright as a witness. Such declarations of testators are not always implicitly to be relied on, "and can never, standing singly, supply proof of due execution, or consequently of what is to be taken in lieu of it. In common parlance, a man may well say that he has made a will, when he has *written* a testamentary paper, though unfinished."—1 Jarm. on Wills (mar. pp.) 94-5.

If the Code governs the questions now presented for decision, still the will is not duly executed, and ought not to be admitted to probate, either as to realty or personalty. The two witnesses signed their names at different times, and each in the absence of the other. The instrument is incomplete, and never became the final testamentary disposition of the testator.—Dormer v. Thurland, 2 P. Wms. 506; 1 Jarm. on Wills (mar. pp.) 71-2; Swift v. Wiley, 1 B. Monroe 117-18; Ragland v. Huntingdon, 1 Ired. L. 561.

CLOPTON & LIGON, *contra*:

1. So far as relates to the manner of attestation, there is no material difference between the phraseology of the statute 29 Car. II, and our own statute, either as it existed previous to, or since the adoption of the Code.—Clay's Dig. 597, § 1; Code, § 1611. So that, whether the execution of this be determined by the law in force at the date of the will, or at the time of the death of the testator, makes no difference in respect to the manner of attestation. Our Legislature, having adopted the statute of 29 Car. II, has also adopted the settled construction of that statute by the courts of England.—2 Ala. 625. That settled construction is, that the witnesses need not see

the testator sign the will ; his acknowledgment is sufficient. Grayson v. Atkinson, 2 Ves. Sr. 454, and note 1 ; Ellis v. Smith, 1 Ves. Jr. 16 ; 1 Jarm. on Wills (top pp.) 70-1, and note o ; Gryle v. Gryle, 2 Atk. 176 ; 5 Phil. Ev., notes in appendix, 295.

"Where the testator owns his hand before the witnesses, who subscribe the will in his presence, the will is good, though all the witnesses did not see the testator sign ; and it is observable, that the statute of frauds does not say the testator shall sign his will in the presence of three witnesses, but requires these three things : first, that the will should be in writing ; secondly, that it should be signed by the testator ; and, thirdly, that it should be subscribed by three witnesses in the presence of the testator."—10 Bac. Abr. 490-91. "A will of real estate, executed in the presence of two witnesses, and at the distance of four years afterwards, the testator re-executed his will by drawing a pen on the old stroke in the presence of one other person, who likewise subscribed his name as a witness, held properly executed according to the statute."—*Ib.* 492.

The American cases, with few exceptions, have concurred in and adopted the English construction.—Dudley v. Dudley, 3 Leigh 442 ; Adams v. Field, 21 Verm. 256; 3 A. K. Mar. 146; 2 Barb. Ch. 53; 9 B. Mon. 28; 10 Metc. 54; 17 Pick. 373. The decision in New Jersey is founded upon the peculiar language of their statutes ; and it is certainly worthy of remark, that, whilst some other States have changed the verbiage of their statutes in this respect, no alteration has been made in our new Code.

2. A will, to be valid, must be executed according to the form prescribed by the law at the time of the death of the testator, and not the law in force at the date of the will.—Elcock's Will, 4 McCord 39. The cases which maintain a contrary doctrine all revert to the case of Gilmore v. Shuter, 2 Mod. 310, which does not decide this principle. That case was upon a contract, made before the statute of frauds, and a right of action had accrued. It is admitted, that an act of the Legislature will not be so construed as to give it a retrospective effect, where vested rights are to be affected, unless such intent is clearly expressed. But where there are no

vested rights, (as in case of a will before the death of a testator,) the Legislature clearly has the power to enact a retrospective act ; and, further, a statute which operates upon wills made before its enactment is not a retrospective law, within the meaning of the constitution.—Holbrook v. Finney, 4 Mass. 568; 16 *ib.* 59; 3 Pick. 360, 363; 12 *ib.* 539.

By section 1592 of the Code, "every devise made by a testator in express terms of all his real estate, &c., must be construed to pass all the real estate he was entitled to devise at the time of his death." By what law is it to be determined whether a will made in Alabama before the adoption of the new Code, but where the testator died after the Code went into operation? In those States (except perhaps Pennsylvania) where it is maintained that wills must be governed by the law at their date, their statutes evidently contemplate wills made after their passage. Thus, in North Carolina, "no will in writing made after the 4th July, 1841," &c.; in Connecticut, "any person *may* by such will devise", &c. Or else, the statute expressly exempts wills made before its adoption, as in New York, and 1st Victoria. "A will", says Chancellor Walworth, "does not take effect from its date, but only from the death of the testator." "The validity of the trusts and provisions of a will must depend upon the law as it was when the will took effect by the death of the testator."—De Peyster v. Clendening, 8 Paige 304; Adams v. Wilbur, 2 Sumner 271; Hardy v. Toney, 20 Ala. A statute passed after the making of a will, but before the death of the testator, will operate upon the will.—2 Foster 434; 4 Hill 138; 12 Metc. 169; *ib.* 262.

By these cases, the principle is clearly and ably maintained, that whether after-acquired estate will pass by a will must be determined by the law in force at the death of the testator. This is upon an analogous principle : "Where an action was brought to recover a debt more than six years old, and in order to take the case out of the statute, the plaintiff gave in evidence a verbal promise made in February, 1828,—*it was held*, that the plaintiff could not recover, because the statute of Geo. IV, adopted in May, 1828, required the promise to be in writing.—9 Bacon's Abr. 222. That statute only regulated the manner in which subsequent promises should be proved ; it was a question of evidence. Likewise is the manner of

attesting a will : it is required to obtain certain proof of its proper execution, and that it is the will of the testator.

It seems strange to 'assert, that whether a will shall be admitted to probate must not be determined by the law in force at the death of the testator, but by a law which was repealed before his death.

Whether the testator intended any further act to complete the will, must be determined from the face of the will. No intentional incompleteness appears upon the face of this. It does not appear that he even intended to have it attested at all.—McGrew v. McGrew, 1 Stew. & Por. 30 ; Hilliard v. Buford's Heirs, 10 Ala. 982.

GOLDTHWAITE, J.—The legal questions presented for our determination arise upon these facts : In January, 1848, Jacob Hoffman executed a paper purporting to be his last will, by which he bequeathed one third of all his property, real and personal, to his wife for life, and at her death to certain of his children who are named in the instrument ; and the remaining two thirds of his property to be equally divided among certain of his children, who are also named. There are other provisions, which it is unnecessary to notice, as they have no bearing on the points involved. The writing has an attestation clause, and was published by the testator before two witnesses, who subscribed their names as such ; the publication being made and the witnesses attesting at different times, and in the presence of the testator, but not in the presence of each other. Jacob Hoffman died in February, 1853 ; and upon these facts, the sole question is, whether the instrument is valid as a will of both the real and personal property, or of either the one or the other.

That the instrument is not effectual as a will of real estate, under the law in force at the time of its execution, (Clay's Dig. 596, § 1,) which required three attesting witnesses, is conceded ; but at the time of the testator's death, this act had been repealed, and by the law then in force, but two witnesses were required.—Code, § 1611. Assuming, for the present, that the instrument was duly executed under the new law, the only question is, which of the two statutes governs. The Legislature unquestionably have the power to prescribe rules

for the execution·of wills, before a right has been vested in the devisee, legatee, or heir, by the death of the testator ; and it was, therefore, entirely competent for them to fix the number of witnesses which were essential to the validity of any will, whether made before or after the passage of the statute ; and in this aspect, the question is one of statutory construction simply. Does section 1611, which provides that no will shall be effectual to pass real or. personal property without two witnesses, embrace wills made before the passage of the act?

In Gilmore v. Shuter, 2 Mod. 310, it was held, that the statute 29' Car. II, c. 3, which made. certain agreements void unless in writing, did not extend to parol agreements made before its passage ; and the court assimilates it to the case of a will made before the statute, which (the judges say) would be good, although not made in pursuance of it. So, in Ashburnham v. Bradshaw, 2 Atk. 36, where the question arose upon a devise to charitable uses, made before the mortmain act, it was held by Lord Hardwick, that the act did not apply to wills made before its passage, although the testator died after it took effect ; and in the case of The Attorney General v. Andrews, 1 Ves. Sr. 224, the same doctrine as to the application of that act to wills made ·before its passage was re-asserted. The principle which we extract from these decisions is, simply, that where the words do not force. them, the courts will not construe a statute so as to defeat a will or bequest which would have been valid, had the testator died immediately after making it ; and to that extent we regard them as authority. But it does not follow, that if the effect of the statute was to sustain, rather than invalidate—to save, rather than to destroy—the same rule of construction would have been adopted. In many of the States, the artificial rule which prevented a devise, no matter in what words expressed, from passing lands subsequently acquired, has been changed by statute providing that the real estate acquired by the testator after the execution of his will shall pass by general words, unless a contrary intention appear on the face of the will ; and in New York, Massachusetts, and New Hampshire, it has been held, that these statutes extended to every case where the testator died after they took effect ; thus giving to them, in one sense, a retro-active operation.—De Peyster v.

Clendening, 8 Paige 295 ; Bishop v. Bishop, 4 Hill (N. Y.) 138 ; Cushing v. Aylwin, 12 Metc. 169 ; Pray v. Waterston, *ib.* 262; Loveren v. Lamprey, 2 Fost. 434.

It is true that the courts of Pennsylvania, Connecticut, and North Carolina have confined the operation of similar statutes to devises made since their passage ; resting their decisions on the cases of Gilmore v. Shuter, and Ashburnham v. Bradshaw, *supra*, and the general rule of construction against the retro-active operation of statutes.—Mullock v. Souder, 5 W. & S. 198 ; Brewster v. McCall, 15 Conn. 274; Doe v. Speight, 9 Ired. Law 57. With all deference, we think the error of these decisions arises from mistaking the true principle of the cases on which they rest, and giving too much force to the rule of construction. The object of the Legislature was, to preserve and give effect to the intention of the testator, by abolishing a purely technical rule, which too frequently defeated it. Whenever a statute is levelled against an abuse, or in furtherance of an acknowledged principle of right and justice, every reason exists for its most liberal application ; and in such cases, it may fairly be presumed, that it was the intention of the Legislature that the boon of the statute should be extended to every case which its words could properly include.

We do not say, that section 1611 of the Code, in its operation on wills of real estate made before it took effect, furnishes as strong an illustration in favor of the rule of construction for which we contend, as the statutes to which we have referred, giving effect to devises ; but the same principle applies in each case. The old law required three witnesses ; but the Legislature has said, in effect, that this number is more than is necessary—that two are sufficient. If the statute had increased the number, and thus superadded a condition, we should then say, as the Court of King's Bench said in relation to the statute of Car. II, that it applied only to wills made after its passage ; but when its object is, not to abridge, but to enlarge the privileges of the testator, and to give effect to his will, then it falls within the principle by which devises, made in words which, by Legislative construction alone, include lands subsequently acquired, are extended to wills made before the law took effect. The purpose of the statute was for the prevention of fraud ; and if the Legislature have said

that two witnesses are enough to accomplish this object, and have not limited its application, why should courts do it? The fair presumption is, that it was intended to meet every case to which the provisions of the section could legitimately extend ; and giving effect to this intention, we must apply it to every will of real estate, where the testator died after the Code went into operation. In relation to wills of personal property, a different rule prevails ; for, in respect to them, the operation of the statute is to abridge the right of the testator, and upon the authority of Gilmore v. Shuter, and Ashburnham v. Bradshaw, *supra*, they would be governed by the old law. In the present case, however, the record shows that the will was established by two witnesses, which is all the former law required.—Johnson v. Glasscock, 2 Ala. 218.

In reference to the objection which was urged in argument, that the witnesses, although they signed in the presence of the testator, did not attest the will in the presence of each other, it is only necessary to observe, that the statute does not require this in terms ; and although some of the earlier cases seem to have thought it necessary under the statute of Car. II, c. 3, the language of which is in this respect almost identical with our own, (Cook v. Parsons, Prec. in Ch. 184 ; Dormer v. Thurland, 2 P. Wms. 506,) the contrary was expressly ruled in Smith v. Codron, 2 Ves. Sr. 455, which decision has been followed both in England and the United States.—Grayson v. Atkinson, 2 Ves. Sr. 454; Westbeech v. Kennedy, 1 Ves. & B. 362; Wright v. Wright, 5 M. & Pay. 316 ; Dewey v. Dewey, 1 Metc. 349 ; 4 Kent's Com. (5th ed.) 516.

The will being perfectly executed, both in relation to the real and personal property, the charge of the court, which declared it void as to the former, was erroneous.

Judgment reversed, and cause remanded.

RICE, J., having been of counsel, did not sit in this case.