# Moore *v.* Spier.

### *Contest of Will.*

1. *Appeal; when dismissed.*—An appeal from a decree rendered on the contested probate of a will, taken within thirty days from its rendition, will not be dismissed on motion, because the citation was not served for several months after the appeal was sued out.

2. *Same; irregularity in waived by joinder in error.*—In such case,

9

[Moore v. Spier.]

the appellee might, *it seems*, have had an affirmance on certificate, but the irregularity is waived by a joinder in error without objecting to it.

3. *Will; how attested.*—The attesting witnesses to a will are required to sign it in the presence of the testator (Code, § 2204), but not in the presence of each other.

4. *Undue influence; when burden on legatee or devisee to disprove.* Under the rule laid down by this court in former cases (*Waddell v. Lanier*, 62 Ala. 347; *Shipman v. Furniss*, 69 Ala. 564), when the principal devisee and legatee occupied a confidential relation to the testatrix, though related to her by consanguinity more distantly than the contestants, the burden of proof is on him to show that the will was not procured by fraud or undue influence.

5. *Sale of land devised, only revocation pro tanto.*—A sale of the land devised, subsequent to the execution of the will, while it might operate a revocation *pro tanto* of the will, would not invalidate it entirely, nor prevent its probate as to the other property embraced in it.

6. *Evidence as to mental condition of testatrix; when competent.*—Before a witness can be allowed to testify as to the mental condition of the testatrix, it must be first shown that his acquaintance had been so intimate, and had continued for such a length of time, as justified the formation of a correct judgment as to her mental *status* and habits.

7. *Same.*—While the proper inquiry is as to the mental *status* at the time the will was executed, evidence as to its condition at a former time is relevant; and when weakness of mind resulting from senility is urged against the will, it is competent for the proponent to adduce evidence showing that, subsequent to the date of the will, no appearances of imbecility were exhibited.

8. *Same.*—A witness, having knowledge of the facts, may testify that the testatrix was firm in her views and convictions, or, on the other hand, that she was capable of being easily influenced; but not that her character in the community was that of one easily influenced.

APPEAL from Wilcox Probate Court.

Heard before Hon. THOS. L. COCHRAN.

In the matter of the last will and testament of Elizabeth Savage, deceased, which was propounded for probate on the 11th April, 1884, by James P. Spier, the executor and principal beneficiary named therein. The probate of the instrument was resisted by Leonard Moore and other relatives of the testatrix upon the grounds or specifications hereinafter set out. The proceedings attacking the validity of the will were begun in the Probate Court, but subsequently transferred to the Register in Chancery on account of the incompetency of the presiding judge.

The grounds of contest embraced in the specifications or pleas filed by the contestants on the hearing before the register were, in substance, that the deceased was mentally incapable of making a lawful will at the time of its execution; that she was not "of sound mind and disposing memory;" that said supposed will was not executed in manner and form as required by law; that said supposed will was obtained by undue influence exerted by the proponent; and that the said will was obtained by the fraud of said James P. Spier. As shown by the bill of exceptions, which purports to set out all the evidence,

[Moore v. Spier.]

the execution of the will on 14th May, 1866, was duly proven by the attesting witnesses. By its terms, almost her entire estate, after a few unimportant bequests to other relatives, was left to James P. Spier, the proponent, who was a cousin of the deceased, and was employed at the time and until her death in March, 1883, as a superintendent upon her place in said county. Numerous witnesses introduced by the contestants testified as to the mental capacity of Mrs. Savage; the substance of their testimony being that the testatrix was "childish" and subject to frequent spells of causeless weeping; that at times she was possessed by a hallucination that she was in a "starving condition;" and was somewhat addicted to the use of spirituous liquors, though the testimony was in conflict as to the extent of her indulgence in this habit. The contestants adduced other testimony as to peculiarities and eccentricities of the deceased, one of which was an indiscriminate habit of addressing acquaintances and strangers as "honey." Some of contestants' witnesses, however, testified that the deceased, at times, "had as good a mind as any woman" and was a "good business woman" and "not easily influenced." One of the witnesses introduced by the contestants testified that her mind "was very good in 1865 and 1866." The evidence adduced by the proponent to sustain the will tended to show that the testatrix was a woman of no little business capacity; that her indulgence in spirituous liquors was not immoderate; that the various peculiarities testified to by the contestants' witnesses resulted from an over affectionate disposition and not from mental weakness, and that she was not easily influenced by others. As further shown by the bill of exceptions, the contestants introduced in evidence a conveyance dated 10th October, 1867, by which the said Elizabeth Savage transferred to the proponent, for a recited consideration of $9,673.00, certain lands located in Wilcox county, together with a number of mules, horses, and other personal property. The greater part of the property thus conveyed was substantially the same as that embraced in the will. The contestants requested the court to charge the jury: "That under the laws of Alabama, if the testatrix, after the making of her will, sold and conveyed, and before her death received the purchase-money for, the property so sold and conveyed by her, such sale and conveyance and payment of the purchase-money before her death, is a revocation of said devise, so far as the property so sold, conveyed and paid for is concerned." This charge the court refused to give, and the contestants duly excepted. For the purpose indicated in the opinion of the court, the contestants offered in evidence the will of John McCondichie, the father of the testatrix, which contained the following: "Now while I wish my above named

[Moore v. Spier.]

daughter, Elizabeth Savage, to enjoy life, *I am far from wishing a profligate use made of her portion*, and that it may not be, I wish it to be under the inspection of her brothers, Jay and John McCondichie, but they are not at any time to take away, or deprive her of an economical use of this property during her life." To the introduction of this will, and to the introduction of the above clause thereof, the proponent objected; the objection was sustained by the court, and the contestants excepted. The contestants also reserved exceptions to the action of the court in refusing to allow Leonard Moore, one of contestants' witnesses, to be asked "whether or not he knew the condition of Mrs. Savage's mind in 1866;" and in permitting one Warren Thompson, a witness for proponent, to testify to the *general character* of Mrs. Savage in the community in which she lived "as to whether or not she was a woman easily influenced."

As recited in the bill of exceptions, "the court, in the general charge, charged the jury as follows as to what, in law, was an execution of a will: that if a will is in writing, signed by the testator, or by some one for him, in his presence, by his request, and attested by two witnesses in the presence of the testator, it is executed in the manner and form prescribed by law." To this charge the contestants excepted. The contestants further excepted to the refusal of the court to give the following charges, numbered respectively 12 and 15, which, with numerous others, were requested in writing: "If the jury believe, from the evidence, that the deceased was, at the time of the execution of said alleged will, an aged woman, and had a weak mind and memory, although she might not be legally incompetent to make a will, yet the will of such a person ought not to be sustained, unless it appeared that such disposition of property had been fairly made and emanated from a free will without the interposition of others." "The existence of confidential relations between the testatrix and legatee, or devisee, excites the suspicion and jealousy of the court, and casts upon the proponent of the will the duty of showing, by affirmative evidence, the testatrix's capacity, volition and free agency."

The assignments of error include the rulings above noted, with numerous others not necessary to be set out.

S. J. CUMMING, for appellants.

JONES & JONES, and JOHN Y. KILPATRICK, *contra*.

SOMERVILLE, J.—The motion to dismiss the appeal can not be sustained. It was taken within the thirty days allowed

[Moore v. Spier.]

by the statute, so far as appears from the record. The notice or citation, it is true, was not served for several months afterwards, but this irregularity affected only the question as to when the appeal should stand for trial, and not the jurisdictional validity of the appeal itself, which became complete when it was prayed for and the requisite security given. *Willingham v. Howell*, 34 Ala. 680. The appellee, it may be, had his remedy for this delay by requesting a judgment of affirmance on production of the proper certificate from the court below. But this he did not do. The irregularity, moreover, was waived by the joinder in error without previously interposing the objection. *Mobile Mut. Ins. Co. v. Cleveland*, 76 Ala. 321; *Bolling v. Jones*, 61 Ala. 508; 1 Brick. Dig. 103, §§ 289–290.

The instruction of the court to the jury was free from all error so far as it defined what was requisite in law to the mechanical execution of a will. The statute requires wills, other than those that are *nuncupative*, to be "in writing, signed by the testator, or some person in his presence and by his direction, and attested by at least two witnesses, who must subscribe their names thereto in the presence of the testator." Code, 1876, § 2294. It is not required that the witnesses should sign in the presence of each other. *Hoffman v. Hoffman*, 26 Ala. 535.

The question of chief importance in the case is that of undue influence which is alleged to have been exerted by the appellee upon the mind of the testatrix in procuring the execution of the will in contest. It is not only proper but necessary for us to say, that we find no positive evidence in the record which tends to show the exercise of any influence, which is in its nature essentially fraudulent, involving, as it does, a resort to improper arts or circumvention, operating to induce one to confer a benefaction contrary to his deliberate judgment, reason, and discretion. Bigelow on Frauds, 288; 1 Redfield on Wills, 530. Hence many of the charges, which may be interpreted to assume the existence of such influence, were properly refused, because they were, for this reason, faulty and misleading.

It is made to appear, however, that a confidential relation existed between the devisee, Spier, and the testatrix at the time of the execution of the will, which was on the fourteenth day of May, 1866. He was her trusted agent, having the general management of her property and business, being employed at a stipulated salary payable by the year. Though a kinsman by consanguinity, he was not so nearly related to her as were some of the contestants. By great kindness towards the testatrix he had acquired an influence over her which, though it may not have been illegitimate, was very great. Mrs. Savage was about

[Moore v. Spier.]

sixty-eight years of age at the time she executed the will, and was simple-minded, although not, perhaps, of strictly feeble intellect. Being occasionally addicted to drinking, she was sometimes of eccentric manners and apparently hysterical. The value of the property left by the will was about ten thousand dollars, being substantially all owned by the testatrix, except a few legacies, purely nominal in amount, left to other relatives.

Under the rule laid down by this court in *Shipman v. Furniss*, 69 Ala. 555, 564, and *Waddell v. Lanier*, 62 Ala. 347, the burden of proof, in our opinion, was cast on the devisee to show that the will in question was not superinduced by fraud or undue influence, but was the result of free volition on the part of the testatrix. We need not add anything more here by way of discussion to what is said in those cases, except that this rule as to the burden of proof is one of public policy, designed to prevent the abuse of certain confidential relationships, and to preserve them free from the taint of an overreaching selfishness.

The court, under the influence of this rule, should have given the twelfth and fifteenth charges requested by the contestants.

Conceding that the sale of the land to the appellee was a revocation of the will so far as the land itself was concerned, it would not invalidate the will *in toto*. The instrument might still be valid and operative as to the other property of the testatrix, and, if so, should be admitted to probate as to it. The twenty-fourth charge, failing to recognize this principle, was properly refused. *Taylor v. Kelly*, 31 Ala. 59; *Welsh v. Pounders*, 36 Ala. 668; Code, 1876, § 3287.

The other charges, bearing on the subject of undue influence, except the fourth, were abstract or otherwise misleading, and their refusal imputes to the court no error.

The witnesses, who were examined as to the condition of Mrs. Savage's mind at the time of making the will, should have been required first to show that their acquaintance with her had been sufficiently intimate and long to justify the formation of a correct judgment as to her mental *status* and habits. The rule on this subject is discussed at length in *Ford v. The State*, 71 Ala. 385, and will be a sufficient guide upon another trial.

The proper inquiry was, of course, the condition of the testatrix's mind on the day the will was executed. Its *status* before this period was relevant, however, because it may have continued in the same condition. So, one of the points urged being weakness of mind engendered by senility, it was competent to show that, subsequent to the date of the will, her mind was free from every appearance of imbecility.

It was competent to ask witnesses, who showed ample know-

ledge of the facts, whether the testatrix was a woman firm in her views and convictions, or one capable of being easily influenced. This would be in the nature of a collective fact. But it was clearly erroneous to permit the witness, Thompson, to testify that her character in the community was that of one easily influenced. This was not a case where proof of character was admissible. It was an attempt to establish a substantive fact by public repute.

So the estimate in this particular, or any analogous one, in which she may have been held by McCondichie, could not be proved by declarations made in the latter's last will, as was sought to be done by the appellants. This evidence was obviously hearsay, and was properly excluded from the jury.

The judgment of the probate court is reversed and the cause remanded.