PEOPLE'S LOAN AND EXCHANGE BANK v. GARLINGTON.

1. JURISDICTION—LIFE TENANT—REMAINDERMAN—MORTGAGE—TITLE—REAL PROPERTY.—When a life tenant raises by answer to a foreclosure suit by the mortgagee of the remainderman, the question of absolute title in himself, the Court has jurisdiction to decide it.

2. MORTGAGE—A CONTINGENT REMAINDER in realty can be the subject of mortgage.

3. LIFE TENANT—REMAINDERMAN—DEED OF FEOFFMENT—LIVERY OF SEIZIN.—Under the common law, a life tenant could not bar a contingent remainderman by deed of feoffment with livery of seizin unless he held the legal title.

4. TRUSTS—STATUTE OF USES—LIFE TENANT.—THE LEGAL TITLE here was not vested in the life tenant under statutes of uses, but was in executors, because they had duties to perform under the will.

5. LIMITATION OF ESTATES—DEED OF FEOFFMENT—LIVERY OF SEIZIN—LIFE TENANT—REMAINDERMAN.—THE ACT OF 1883 (Rev. Stat., 1977) providing that contingent remainders cannot be barred by deed of feoffment with livery of seizin, is neither unconstitutional nor retroactive, when applied to a power vested *before,* but not executed until *after* the enactment of the statute.

Before BENET, J., Laurens, April, 1898.   Affirmed.

Foreclosure by People's Loan and Exchange Bank of Laurens, S. C., *v.* John D. Garlington, John G. Williams *et al.* The Circuit decree is as follows, omitting formal parts:

This action was begun January 8th, 1895. The defendant, John G. Williams, demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action as to him, which demurrer was overruled, and, a jury trial being waived, it was referred to a referee by order of the Court, to take the testimony. The cause came on for a hearing before me at a special term of the Court of Common Pleas, begun and holden for the County of Laurens and said State on the 19th day of April, 1898. The following are the controlling facts as revealed by the evidence: John D. Williams, of the county and State aforesaid, died testate in June, 1870. The testator left surviving him a widow, Anna; John G., a defendant in this action; Phoebe, now Mrs. Witherspoon, and Lucy Williams, and a grand-son, John D. Garlington, who were his heirs at law and beneficiaries under his will. The widow elected to take dower, and the will became inoperative as to her under the limitations of the will. Lucy died shortly after the testator, intestate and unmarried. So much of the testator's will as is pertinent to this action is to be found in the third and eleventh clauses thereof. In the third clause the testator recites that, "Having heretofore made large advancements to my son, John G. Williams, which, with the portion of my estate which I now give him in this clause, I consider to be a fair proportion thereof, I give and bequeath to my executors hereinafter named, for his use and benefit during his natural life, my Spring Grove tract of land, including the land which I have added thereto, all lying on the west side of Mudlick Creek, and supposed to contain about 1,500 acres, together with all the property which was on said place when he took charge of the same, to remain in his possession and enjoyment, unless efforts be made to subject the same to the payment of his debts and liabilities, and in this event to be taken charge of by my executors to prevent and protect the same from such liabilities; and at his death to be equally divided between such child or children as he may leave surviving at his death; or should all his children die

before obtaining the age of twenty-one years, then to revert to my estate for division as the residue of my estate is hereafter directed, and with the provision that no more of the woodland is to be cleared up for cultivation; hereby directing my executors, hereafter named, immediately after my death to deliver and hand over to my said son all the notes I hold on him, and also all the accounts I have against him previous to January 1st, 1869, amounting to several thousand dollars, in lieu of his interest in the balance of my estate." The eleventh or residuary clause of the will is as follows: "Having specially disposed as I desire, I will and bequeath all the rest and residue of my estate, such part thereof as I have not otherwise directed, to be sold by my executors at their discretion and the proceeds thereof be divided as follows: one-fourth part to Col. James W. Watts and Dr. William Anderson, in trust for the sole and separate use of my said wife during her natural life, with power on her part to dispose of the same at her death to such person as she may see fit, and the remaining three-fourths to be equally divided between my two daughters and grand-son in equal portions." Then follow limitations over in the case of the death of either of them without leaving issue surviving, first to the survivors with limitations over, in case of the last survivor without leaving issue. On the 3d day of December, 1892, the defendant, John G. Williams, conveyed the Spring Grove tract of land to one James T. Bozeman by deed of feoffment, with livery of seizin, and on the same day the said Bozeman reconveyed the said tract of land to the said John G. Williams. Both deeds were duly recorded in the proper office for Laurens County.

The defendant, John D. Garlington, on or about the 13th day of February, 1892, executed to the plaintiff in this action his promissory note in the sum of $484.85, and due and payable on November 1st, after date, with interest after maturity at the rate of eight per cent. per annum. On the same day, in order to better secure the said debt, he made and delivered to the said plaintiff a mortgage of all his interest in

the said Spring Grove place, conditioned to pay said debt and interest, and attorney's fee, if collected by law, which mortgage was duly recorded in the proper office on the 24th of February, 1892. Certain judgment creditors of John D. Garlington were also made parties to this action, who came in and established their judgments. The testator, John D. Williams, appointed as his executors James W. Watts and William Anderson, and the records of the court of probate, which were introduced in evidence, show that they qualified and entered upon the duties of their office.

This action was for the foreclosure of the Garlington mortgage. I hold that the deed of feoffment, with livery of seizin, executed by John G. Williams, is a nullity for two reasons: first, because the legal estate of the Spring Grove tract of land is in the executors. The testator says: "I give and bequeath to my executors hereinafter named, for his (John G. Williams) use and benefit during his natural life, my Spring Grove tract of land." The testator directs that the Spring Grove place "remain in his possession and enjoyment, unless efforts be made to subject the same to the payment of his debts and liabilities, and in this event to be taken charge of by my executors to prevent and protect the same from said liabilities." Here is a duty devolved upon the executors, for the performance of which it is necessary for the legal title to remain in them. The trust, then, is active, and the statutes cannot execute the use in Williams. Second. Because the act of 1883, 18 vol. General Statutes, 430, Revised Statutes, sec. 1977, abrogated and destroyed the power, which existed under the common law, to make the deed of feoffment. Defendant Williams claims that the act of 1883 cannot affect him, because the right had vested, and the act would be unconstitutional and retrospective. The constitutional point can have no application because the right is not founded in contract. I do not regard the right as a vested right, but as a right inchoate or a power which he might have exercised under the old common law, but which he did not exercise prior to the passage of the act of 1883.

As Endlich on Int. of Statutes, 281, says: "Mere inchoate rights, depending for their original existence upon the law itself, may be modified or abrogated by the legislature at its pleasure, and statutes will not be presumed not to affect such rights in an unperfected state at the time of its enactment. As a general rule, whenever a statute gives a right, in its nature vested but remaining executory, if it does not become executed before a repeal of the law giving it, it falls with the law, and cannot be enforced." The common law prevails in this State, except when modified by statute. Under it Williams had a right or power, but it was inchoate or executory. Before the power was exercised, the legislature modified the common law, abrogating the power; this the legislature had a perfect right to do. I am, therefore, of opinion and hold that John G. Williams has only a life estate in the Spring Grove place, and that the contingent remainders created by the will of John D. Williams have not been destroyed. Having held that the deed of feoffment is a nullity and that John G. Williams has only a life estate in the Spring Grove tract, it follows that his said life estate therein cannot be disturbed at this time, and as to him the complaint must be dismissed as affecting said life estate. There can be no doubt that a contingent remainderman has a right to assign or mortgage his contingent interest in real estate. John D. Garlington having done so, and the debt, for which the mortgage is a security, being due and payable, I hold that the plaintiff has the right to foreclose and sell, and to have its debt paid out of the proceeds of sale. When the contingent estate is sold by way of foreclosure of the mortgage, if any surplus remain after paying the plaintiff's claim, it must be held subject to the further order of this Court, and any party to this suit has leave to apply at the foot of this decree for orders carrying out the views herein announced.

From this decree the defendant, John G. Williams, appeals, excepting thereto because he erred: I. In not dismissing the complaint as to the defendant, John G. Williams, the action as to him being premature. II. In not holding that

27—54

the plaintiff showing no present title and right of possession to the land as against John G. Williams, the complaint as to him should be dismissed. III. In assuming jurisdiction to determine between the plaintiff, a mortgagee of a mere contingent remainderman, and this defendant, the life-tenant, the question of title that could arise only at the determination of the life estate. IV. In assuming jurisdiction to determine between the plaintiff, the asignee of a contingent remainderman, and this defendant, the conceded life-tenant, rights to the property which can arise only upon the falling in of the life estate, and which depend upon contingencies that may or may not happen by that time. V. In holding "that the deed of feoffment, with livery of seizin, executed by John G. Wiliams, is a nullity." VI. In holding "that the legal estate of the Spring Grove tract of land is in the executors." VII. In holding that "the trust is active, and the statute cannot execute the use in Williams." VIII. In holding that the act of 1883, 18 vol. General Statutes, 430, Revised Statutes, section 1977, abrogated and destroyed the power and right which defendant, Williams, under the common law, had to make the deed of feoffment, with livery of seizin, and rendered nugatory the effects of his attempted deed of feoffment. IX. In holding "that the contingent re- mainders created by the will of John D. Williams have not been destroyed." X. In not holding that the life-tenant, John G. Williams, by his deed of feoffment, with livery of seizin, to James T. Bozeman, barred all the contingent remaindermen, including John D. Garlington, the plaintiff's mortgagor or assignor. XI. In ordering a foreclosure of the plaintiff's mortgage and a sale of the premises.

*Mr. W. J. Stribling,* for appellant, cites: *Complaint should have been dismissed as to this defendant:* 2 S. C., 277; 11 Rich., 257; 2 Rich. Eq., 139; 51 S. C., 355. *At common law, remainderman can be barred by deed of feoff- ment, with livery of seizin:* Rice, 459; 10 S. C., 392; 32 S. C., 72; 10 S. C., 376. *Act of 1883 (18 Stat., 430,) cannot*

*apply to this case:* 11 S. C., 73; 19 S. C., 243; 7 S. C., 1, 344. *Will imposes no duties upon executors as trustees:* 32 S. C., 76; 2 McC., 252; 10 S. C., 392; 16 S. C., 545; 18 S. C., 184; 29 S. C., 135.

*Messrs. Ball & Simkins,* also for appellant, cite: *Under will, Williams took control of property without intervention of executors:* 10 S. C., 376; 32 S. C., 72. *The act of 1883 would be retroactive as to this case, and cannot apply:* 12 N. Y., 202.

*Messrs. N. B. Dial and Ferguson & Featherstone,* contra, cite: *When Williams executed the deed of feoffment, he forfeited his estate under will, and remainderman had right to enter:* Dud. Eq., 120; 10 S. C., 389. *The deed of feoffment is a nullity under the act of 1883 (Rev. Stat. 1977):* 12 Wis., 371; 6 Wend., 526; 90 U. S., 137. *An executory trust is created by the will:* 2 Rich. Eq., 53; 1 Hill L., 413; 36 S. C., 365; 46 S. C., 351; 51 S. C., 555.

March 20, 1899. The opinion of the Court was delivered by

Mr. Chief Justice McIver. This was an action for foreclosure of a mortgage executed by the defendant, John D. Garlington, upon his interest in a certain tract of land known as "Spring Grove." So far as this appeal is concerned, the only controversy is between the plaintiff and the defendant, John G. Williams, who, by his answer, "for a second defense, alleges that neither the plaintiff nor his alleged mortgagor has any title to or interest in Spring Grove," having alleged, in his first defense, "that he is the owner, and entitled to retain the possession of Spring Grove." A jury trial having been waived, the case was heard by his Honor, Judge Benet, upon the testimony taken and reported by a referee, who rendered a decree which is set out in the "Case," which should be incorporated in the report of this case. In will be sufficient, therefore, to state

here, that the Circuit Judge, by his decree, adjudged that the
defendant, John D. Garlington, was entitled to an interest
in the Spring Grove tract of land, as a contingent remainder-
man, under the will of the late John D. Williams, and that
such interest could be sold under the mortgage sought to be
foreclosed in these proceedings.    Accordingly judgment
was rendered for the sale of the interest of the mortgagor,
John D. Garlington, and that the proceeds of such sale be
applied to the payment of the amount due on the mortgage
debt held by plaintiff, after first paying the costs and ex-
penses of such sale and the cost of this action.

From this judgment the defendant, John G. Williams,
alone, appeals upon the several exceptions set out in the re-
cord, which should be likewise incorporated in the report of
this case.    We do not propose to consider these exceptions
*seriatim,* inasmuch as, according to our view, they raise but
two general questions, viz: 1st. Whether the action was
prematurely brought as against the appellant. 2d. Whether
the interest of John D. Garlington, as a contingent remain-
derman, in the Spring Grove tract of land, was barred or de-
stroyed by the deed of feoffment, with livery of seizin, exe-
cuted by the life tenant of said land.    For a proper under-
standing of these questions it may be well to state here that,
under the established facts in this case, the Spring Grove
tract of land, formerly belonging to one John D. Williams,
who died on the ―――― day of June, 1870, leaving a will, by
the third clause of which he devised Spring Grove to his
executors for the use and benefit of his son, the said John G.
Williams, during his natural life, "to remain in his posses-
sion and enjoyment, unless efforts be made to subject the
same to the payment of his debts and liabilities, and in this
event to be taken charge of by my executors to prevent and
protect the same from such liabilities, and at his death to be
equally divided between such child or children as he may
leave surviving at his death; or should all his children die
before attaining the age of twenty-one years, then to revert
to my estate for division, as the residue of my estate is here-

after directed." And by the eleventh clause of his will the testator devised the rest and residue of his estate as follows: one-fourth to certain trustees for the sole and separate use of his wife, and the remaining three-fourths to be equally divided between his two daughters, Phoebe and Lucy, and his grand-son, the said John D. Garlington. There are other provisions in these two clauses of the will, which we do not deem it necessary to set out here, as they are not pertinent to the inquiry in this case. It is conceded, as we understand it, that under these two clauses of the will, the mortgagor, John D. Garlington, was entitled to a contingent remainder; but whether conceded or not, it is clear that such would be the result, under the case of *Faber* v. *Police,* 10 S. C., 376. It also appears that the life tenant, John G. Williams, on the 3d day of December, 1892, with the avowed purpose to bar the contingent remainders created by the will, executed a deed of feoffment, with livery of seizin, purporting to convey the absolute estate in fee in the Spring Grove tract to one James T. Bozeman, and that, on the same day, the said Bozeman reconveyed the same to the said John G. Williams. Both of these deeds were duly recorded. It seems, however, that prior to this transaction, the mortgage which the plaintiff is seeking to foreclose, was executed, to wit: on the 13th of February, 1892. In the light of the foregoing facts, which are either conceded or established by the findings of the Circuit Judge, to which findings there is no exception—all the exceptions taken being to the legal points ruled by the Circuit Judge—we will proceed to the consideration of the first question above stated.

The appellant seems to contend that, because the contingencies upon which the estate in remainder would become vested, have not yet happened and may never happen, the plaintiff has now no cause of action, as against the appellant, and, therefore, the complaint, as to him, should have been dismissed. In the first place, it does not appear that any motion was submitted to his Honor, Judge Benet, or that the question which would be presented

by such a motion was either considered or passed upon by
him.    It is stated in that portion of the "Case" in which the
testimony taken by the referee is set out, that at the close of
the testimony on the part of the plaintiff, "the attorneys of
John G. Williams enter a motion to dismiss the complaint,"
but upon what ground is not stated.    Certainly the referee
had no power to consider or decide the question presented by
the motion, as he was appointed simply to take the testi-
mony, and he did not undertake to do so, and the Circuit
Judge does not appear to have done so.    He states, in the
outset of his decree, that the appellant demurred to the com-
plaint upon the ground that it did not state facts sufficient to
constitute a cause of action as to him, which demurrer was
overruled; but as we gather from the argument here, the
demurrer was overruled by his Honor, Judge Aldrich, at a
preceding term of the Court, and not by Judge Benet.    But
waiving all this, in the interest of the appellant, we will not
decline to consider the question on its merits.    We do not
think the question was concluded by the ruling on the de-
murrer, as that ruling was based solely upon the facts as
alleged in the complaint, and there were no allegations in the
complaint upon which the question, as now presented, could
have been raised, as there was nothing in the complaint to
show what was the nature or extent of the mortgagor's in-
terest in the mortgaged premises, or the nature and extent of
the appellant's claim thereto.    Now, however, it does appear
that the interest of the mortgagor is that of a contingent re-
mainderman, and the appellant claims that he is the owner
of the mortgaged premises, and in his second defense he
"alleges that neither the plaintiff nor his alleged mortgagor
has any title to or interest in Spring Grove," the mortgaged
premises.    Now, if a contingent remainder in real estate can
be the subject of mortgage, and if the mortgagor has such an
interest in Spring Grove, we see no reason why the mort-
gagee, upon breach of the condition of the mortgage, may
not proceed to foreclose the same and sell whatever interest
the mortgagor may have in the mortgaged premises, without

waiting until the happening of the condition upon which the remainder would become vested. Especially is this so when the life tenant in possession has, by his answer, raised the issue whether the mortgagor has now *any* interest in the mortgaged premises. Of course, the sale of the interest of the contingent remainderman cannot, in any way, affect the rights of the life tenant; and that is carefully provided for in the Circuit decree. At such sale the purchaser will take only the interest of the mortgagor, whatever that may prove to be. In this case, the life tenant having by his answer denied that the mortgagor has any interest in the mortgaged premises, and alleged that he is the absolute owner of the same, the issue which he has thus presented must be determined. We do not think, therefore, that the action was prematurely brought as against John G. Williams, the life tenant in possession, who had by his deed of feoffment and by the conveyance from his feoffee, both of which were spread upon the records, asserted his claim to the land as absolute owner in fee; and we do think that the Circuit Court had full jurisdiction to hear and determine all the issues as to the rights of the parties, presented by the pleadings. Exceptions one, two, three and four must, therefore, be overruled.

We do not understand that it is questioned that a contingent remainder in real estate can be the subject of mortgage; but if questioned, the following authorities are quite sufficient to show that such an interest in real estate may be mortgaged: 2 Story Eq. Jur., sec. 1021; *Allston* v. *Bank,* 2 Hill Ch., 235; *Roddy* v. *Elam,* 12 Rich. Eq., 343; *Gilkerson* v. *Conner,* 24 S. C., 321, and *Roundtree* v. *Roundtree,* 26 S. C., at p. 471.

It only remains to consider the second question above stated, viz: whether the contingent remainders created by the will of John D. Williams in John D. Garlington and others were barred or destroyed by the deed of feoffment, with livery of seizin, relied on for that purpose. The Circuit Judge held that the contingent remainders were not barred, for two reasons: 1st. Because the

*legal* title to Spring Grove was in the executors, and not in the life tenant. 2d. Because the power of a life tenant to bar contingent remainders by deed of feoffment, with livery of seizin, was taken away by the act of 1883, 18 Stat., 430. It seems to use that both of these reasons are sound. It is not and cannot be denied that, even at common law, a tenant for life could not bar contingent remainders by a deed of feoffment, with livery of seizin, unless he held the legal title. It will be observed that Spring Grove is not devised to John G. Williams, directly, for his life, but to the executors, "for his use and benefit during his life"—and if this were all, there would be no doubt that statute of uses would execute the use, and the legal title would pass to John G. Williams for his life. But this is not all; for the testator proceeds to say that the property is "to remain in his possession and enjoyment, unless efforts be made to subject the same to the payment of his debts and liabilities; and in this event, to be taken charge of by my executors to prevent and protect the same from such liabilities." This rendered it absolutely necessary that the legal title should remain in the executors, in order that they might be enabled to carry out this provision of the will. For if the legal title passed into John G. Williams by virtue of the statute of uses, it would be impossible for the executors to take charge of the property and protect it from the claims of the creditors of John G. Williams. See *Heath* v. *Bishop,* 4 Rich. Eq., 46. But there is another reason why the legal title did not pass to the life tenant by virtue of the statute of uses. Under the eleventh clause of the will, the property known as Spring Grove would, in the event of the death of John G. Williams without leaving a child who should attain the age of twenty-one years, fall into the residue, and that the executors are directed to sell, which they could not do unless the legal title remained in them. It is, therefore, clear that there were duties imposed upon the executors, for the proper performance of which it was necessary that the legal title should remain in them. In such a case

the rule is well settled that the statute of uses does not apply.

But the second and stronger reason why the deed of feoff-ment, with livery of seizin, could not bar the remainders, is that very nearly nine years before the life tenant undertook to do so, the legislature, by the act of 1883 (Rev. Stat., 1977), above referred to, expressly declared: "That no estate in remainder, whether vested or contingent, shall be defeated by any deed of feoffment, with livery of seizin." The object of that act, as declared by its title, was "for better protection of contingent remainders;" and its manifest purpose was to prevent the accomplishment of just such an object as appellant sought to accomplish by his deed of feoffment, with livery of seizin. It is contended, however, that this act cannot be applied to this case for two reasons: 1st. Because such an application of it would render it unconstitutional. 2d. Because it would give the act a retroactive effect. As to the first of these reasons, it is sufficient to say that we are not aware of any constitutional provision with which this act conflicts, and none such has been pointed out. Some allusion has been made in the argument to the provision in the Constitution of this State, as well as in the Constitution of the United States, forbidding the passage of any law impairing the obligation of any contract, but as no matter of contract is involved in this case, it is impossible to conceive how the act of 1883 can be regarded as violative of these constitutional provisions. It certainly cannot be said that the effect given the act of 1883, by the Circuit Judge, would make it retrospective, and for that reason violative of the Constitution, for there is nothing in the Constitution which forbids retrospective legislation, unless it have the effect of impairing the obligation of a contract, or divesting vested rights of property. See *McLure* v. *Melton,* 24 S. C., 559, and cases there cited. Indeed, we do not understand that appellant really relies upon the point that the act of 1883 would be unconstitutional if applied to this case.

We proceed, then, to consider the second reason why ap-

pellant contends that this act of 1883 cannot be applied to the
present case, viz: that so to apply it would give that act a
retroactive effect, in violation of the well settled rule that all
acts must be construed to be prospective and not retrospec-
tive, except when a contrary intention is expressed, or neces-
sarily implied, by the terms used in the act.    In the first
place, we do not consider that the act would be given a retro-
active effect by applying its provisions to the present case.
If the deed of feoffment had been executed prior to the pass-
age of the act of 1883, we could then see how it could be
regarded as giving the act of 1883 a retroactive effect, if the
attempt should be made to apply it to a deed executed prior
to its passage.    But here the deed of feoffment was executed
nearly nine years after the passage of the act, and such deed
can only be permitted to have such effect as the law in force
at the time of its execution allowed it to have.    Certainly the
legislature must be regarded as having the power to make
such changes in the modes of conveying real property,
whether acquired after or owned before the change is made,
and declaring what shall be the effect of any given mode of
conveyance; and while such changes in the law might not
apply to conveyances made before, they certainly would
apply to all conveyances made after such change in the law,
and such legislation could, in no sense, be regarded as retro-
spective.    It is contended, however, by appellant that when
the testator, John D. Williams, died, and his will took effect,
to wit: in 1870, the appellant acquired under the will a life
estate in the Spring Grove land, with the right, under the
law as it then stood, to bar the contingent remainders by a
deed of feoffment, with livery of seizin, and that he could not
be deprived of this right, which became vested in him in
1870, by any subsequent legislation.    There is no doubt that
under the common law of England a tenant for life could bar
contingent remainders by executing a deed of feoffment,
with livery of seizin, and there is as little doubt that this por-
tion of the common law became a part of the law of this
State by virtue of the act of 1712, incorporated in the Gen.

Stat. of 1882 as sec. 2738. This right, or privilege as it should be more properly termed, claimed by appellant is derived alone from the statute law of this State, and may, therefore, be withdrawn whenever the law-making power sees fit to do so—provided, always, that in so doing the Constitution is not violated. A citizen cannot be said to have a vested right in statutory privileges or exemptions. Cooley Con. Lim., 383, of 2d edition. Upon this principle it has been held in *Stoddard* v. *Owings*, 42 S. C., at page 92, that the legislature may change the periods prescribed by statute as a limitation to actions, as well in reference to antecedent as subsequent contracts. In that case, the following language used by the Massachusetts Court, in *Bigelow* v. *Benis*, 2 Allen, 496, is quoted with approval : "It is well settled that it is competent for the legislature to change statutes prescribing a limitation to actions, and that the one in force at the time of suit brought is applicable to the cause of action. The only restriction upon the exercise of this power is, that the legislature cannot remove a bar which has already become complete, and that no new limitation shall be made to affect existing claims, without allowing a reasonable time for parties to bring actions before their claims are absolutely barred by a new enactment." The case of *Gordon* v. *Backman,* first reported in 1 Rich. Eq., 61, and again, upon a petition for rehearing, in 2 Rich. Eq., 43, is very much like this case, in principle, and, as it seems to us, conclusive of this case. There the testator, who died in 1839, provided by his will, that his executors, after a certain event happened, should transport all of his slaves "to the nearest non-slaveholding State in the United States, or to the free colony in Africa." Before this provision of the will was executed, the act of 1841 was passed, whereby it was declared that every bequest providing for the removal of any slaves without the limits of this State should be void. *Held,* that the act avoided this provision of the will, and that the executor must account to the next of kin of the testator for the slaves. Harper, Ch., in delivering the opinion of the Court at the

last hearing, uses this language: "The act (of 1841)
declares, in general terms, that every bequest directing slaves
to be carried out of the State with a view to their emancipa-
tion shall be void.    This, in plain and explicit terms, applies
to every bequest, whether made before the passing of the
Act, or to be made subsequently."    Again he says: "If the
executor had actually sent the slaves out of the State, and the
legislature had then passed an act declaring that he should be
liable for their value, this would have been a retrospective
act, or might have been called an act *ex post facto. * * *
The act of emancipation was to be in future, and the act of the
legislature has intervened to forbid that future action. How,
then, can it be regarded as retrospective, any more than if
the testator himself had expressed an intention of liberating
his slaves, and before his execution of that intention, an act
of the legislature had forbidden it?"    The principles laid
down by this language are entirely applicable to the present
case.    The act of 1883 declares in general terms that "*no*
estate in remainder, whether vested or contingent, shall be
defeated by any deed of feoffment, with livery of seizin."
This, in plain and explicit terms, applies to *every* contingent
remainder, whether created before or after the passing of
the act.    If the deed of feoffment had been executed, and the
contingent remainder had thereby been barred, and the legis-
lature had then passed an act declaring that the contingent
remainder should not be thereby barred, such an act would,
clearly, not only be a retrospective act, but would probably
be regarded as void, as an attempt to divest *vested rights of
property*.    But here the contingent remainder had not been
barred at the time the act of 1883 was passed, and could only
be barred by the future action of the life tenant, and the
effect of the act was simply to forbid such *future* action,
which was, clearly, within the competency of the legislature.
Again, this doctrine that a life tenant may by a deed of feoff-
ment, with livery of seizin, bar contingent remainders, which
had its origin under the feudal system, seems, very gener-
ally, to be regarded as a means of doing a wrong to the con-

tingent remainderman, and always defeats the intention of the testator where such remainders are created by will; and as is said in 20 Enc. of Law, in a note on page 888 of the 1st edition, this power to do such wrong is *strictissimi juris,* and can never expect favor or anything beyond mere support; and a court of equity, viewing it in the light of a wrong, "seizes every occasion and makes every possible stretch for extending its protection against it." To use the language of Mr. Justice Goldsmith, in *Hoffman* v. *Hoffman,* 26 Ala., 544, quoted in a note on page 944 of vol. 6 Ency. of Law, 2d edition, which, though there applied to a different matter, is equally applicable here: "Whenever a statute is levelled against an abuse, or in furtherance of an acknowledged principle of right and justice, every reason exists for its most liberal application; and in such cases it may fairly be presumed that it was the intention of the legislature that the boon of the statute should be extended to every case which its words could properly include." In addition to this, the quotation from Endlich on the Interpretation of Stat., sec. 281, in the decree of the Circuit Judge, shows that inchoate rights, depending for their existence upon the statute law, may, at the pleasure of the legislature, be abrogated or modified, where such rights have not been exercised at the time of the enactment. The same doctrine is held in the case of *Randall* v. *Kreiger,* 23 Wall., 137, cited by counsel for respondent, in which case Mr. Justice Swayne, in delivering the opinion of the Court, used this expressive and pertinent language: "there can be no vested right to do wrong." In this case the right of appellant to bar contingent remainders in the mode adopted by him for that purpose, under the law as it stood at the time the will took effect, cannot be regarded as anything more than a mere inchoate right which he had never attempted to exercise, until after he had been deprived of such right by statute; nor can it be said that he had a vested right to do a wrong to the contingent remainderman by defeating the expressly declared intention of the testator.

We are entirely satisfied, therefore, that, in no view of the case, can any of the exceptions be sustained.

· The judgment of this Court is that the judgment of the Circuit Court be affirmed.